# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:18-cv-00063-KDB
# (5:17-cr-00011-KDB-DCK-3)

| | |
|---|---|
| JENNIFER LEANN ROLAND, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [Doc. 1].

## I. BACKGROUND

On August 7, 2017, Pro Se Petitioner Jennifer Leann Roland ("Petitioner") pleaded guilty pursuant to a written plea agreement to one count of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 846 (Count One). [Criminal Case No. 5:17-cr-00011-KDB-DCK-3 ("CR"), Doc. 57: Acceptance and Entry of Guilty Plea]. Count One further alleged that, "with respect to the offense charged in Count One, five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine … and fifty (50) grams or more of [actual] methamphetamine" are attributable to and reasonably foreseeable by Petitioner pursuant to 21 U.S.C. § 841(b)(1)(A). [CR. Doc. 43: Second Superseding Indictment]. In pleading guilty, Petitioner admitted to being in fact guilty of Count One. [CR Doc. 56 at ¶ 1: Plea Agreement]. A Factual Basis was filed contemporaneously with the Plea Agreement. [CR Doc. 55: Factual Basis]. In signing the Plea Agreement, Petitioner attested to having read and understood the Factual Basis and stipulated that it may be used by the

Court and the United States Probation Office without objection to determine the applicable advisory guideline range or the appropriate sentence under 18 U.S.C. § 3553(a), unless explicit reservation was made to object to a particular fact(s). [CR Doc. 56 at ¶ 4; see CR Doc. 55]. The Factual Basis states, in pertinent part, as follows:

From in or around about 2016 to in or about January 2017, in Caldwell County, North Carolina, and elsewhere, Petitioner was a member of a conspiracy to distribute and possess with the intent to distribute methamphetamine. [CR Doc. 55 at ¶ 1]. On December 22, 2016, an investigative team conducted an undercover controlled purchase of approximately one ounce (28 grams) of methamphetamine from Chuck Allen Church, Jr., ("Church") at his residence in Caldwell County, where he lived with Petitioner. Petitioner was present during the transaction. Later that day, a search warrant was obtained and executed at the residence, resulting in the seizure of an additional 84 grams of 97.8% pure methamphetamine, a "sawed-off" short-barrel shotgun (located in plain view in a closet in a spare bedroom), and approximately $11,658 in cash. The shotgun was manufactured outside the State of North Carolina. It, therefore, travelled in and affected interstate commerce. Petitioner objected to and reserved her right to challenge a weapon enhancement, asserting she had no knowledge of the shotgun's presence. [Id. at ¶ 2].

On January 31, 2017, the investigative team arrested Church and Petitioner who was traveling with Church at the time. The team seized approximately 3.5 grams of methamphetamine, scales, and empty and unused baggies from the residence where Church was located and found approximately $3,500 in his vehicle. Church and Petitioner both provided videotaped post-Miranda confessions in which they admitted trafficking in well over 500 grams of methamphetamine. [Id. at ¶ 4].

On May 31, 2017, Petitioner was charged in a Criminal Complaint with Count One as described above; one count of possession with intent to distribute at least 50 grams of actual methamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A) (Count Two); and one count of possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Three). [CR Doc. 1: Criminal Complaint]. On June 20, 2017, Petitioner was charged in a Second Superseding Bill of Indictment with the same three counts. [CR Doc. 43: Second Superseding Bill of Indictment]. In exchange for Petitioner's agreement to plead guilty to Count One, the Government agreed to dismiss Counts Two and Three. [CR Doc. 56 at ¶¶ 1-2].

A United States Magistrate Judge accepted Petitioner's guilty plea after conducting a thorough plea colloquy, during which Petitioner was represented by counsel. [CR Doc. 112: Plea Hearing Tr.; see CR Doc. 57]. Under oath, Petitioner told the Court that she received a copy of the indictment and discussed it with her attorney. [CR Doc. 57 at ¶ 8; CR Doc. 112 at 4]. The Court read the charge aloud to the Petitioner during the hearing and advised Petitioner of any maximum penalties and mandatory minimum sentences that applied. [Id.; CR Doc. 112 at 4-5]. Petitioner then told the Court that she fully understood the charge against her, including the maximum and minimum penalties she faced. [Id. at ¶ 9; CR Doc. 112 at 5]. The Petitioner further attested that she had spoken with her attorney regarding how the U.S. Sentencing Guidelines might apply to her case and that, in some circumstances, Petitioner may receive a sentence higher or lower than that called for in the Guidelines. [Id. at ¶¶ 13, 15; CR Doc. at 5-6]. Petitioner stated, under oath, that she was in fact guilty of Count One. [Id. at ¶ 24; CR Doc. at 7].

Petitioner further acknowledged her understanding that her right to appeal her conviction and/or sentence and her right to challenge her conviction and/or sentence in a post-conviction proceeding had been expressly waived in the Plea Agreement. [Id. at ¶¶ 27-28; CR Doc. 112 at

11]. Petitioner also told the Court that she was aware that a Factual Basis had been filed in her case and that she had read it, understood it, and agreed with it. [Id. at ¶¶ 30-31]. Petitioner stated that no one had threatened, intimidated, or forced her to enter her plea of guilty. [Id. at ¶ 32]. She told the Court that she was "satisfied with the services of [her] lawyer in this case." [Id. at ¶ 35].

Several months later, Petitioner was sentenced. Before the sentencing hearing, a probation officer prepared a Presentence Investigation Report (PSR). [CR Doc. 80: Presentence Report]. Petitioner's Total Offense Level (TOL) was 27, which included a 2-point firearm enhancement under U.S.S.G. § 2D1.1(b)(1), and Petitioner's criminal history category was II, which yielded a guidelines range of 78 to 97 months' imprisonment. [Id. at ¶¶ 17, 25, 35, 73]. However, because the charge carries a statutory minimum term of 10 years' imprisonment, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), the guidelines term of imprisonment was 120 months, U.S.S.G. § 5G1.1(b). [Id. at ¶ 72-73].

Petitioner's attorney filed several objections to the PSR. [CR Doc. 79: Objections to PSR]. In pertinent part, Petitioner objected to the offense level computation, including the firearm enhancement based on Petitioner's assertions that she did not use the bedroom in which the firearm was found and had no knowledge of its existence. Petitioner further argued that she met the criteria of U.S.S.G. § 5C1.2 and should receive the benefit of the safety valve. And, finally, pursuant the objections regarding the offense level computation, Petitioner argued that she should have been deemed to have an Adjusted Offense Level of 26 and a TOL of 23. [Id. at 1-2]. Petitioner also objected to the determination of her adult criminal convictions, contending that one of her prior convictions for which a point was applied related to the instant offense. Had this point not been added, Petitioner submitted that her Criminal History Category was I. [Id. at 2]. Finally, Petitioner

argued that, based on a TOL of 23 and criminal history category of I, her guideline range for imprisonment should have been 46 to 57 months. [Id.].

At the sentencing hearing, Petitioner reaffirmed that she understood the charge against her, that she was guilty of the offense, and that she was satisfied with her attorney's services. [CR Doc. 111 at 3: Sentencing Transcript]. Petitioner stated that she carefully reviewed the PSR with her attorney. [Id. at 4]. Petitioner's attorney argued that the two-level firearm enhancement should not apply because the firearm was found in a closet in a bedroom located at the opposite end of single-wide trailer Petitioner shared with Church. Petitioner's attorney argued that the bedroom was occupied by another individual and was not used by Petitioner in any way. Further, counsel argued that Petitioner was completely unaware of the existence of the firearm. [Id. at 5-6]. Counsel also asserted that Petitioner needed drug treatment and that having the firearm enhancement would prevent her from receiving any credit toward her sentence for participating in the drug treatment program. [Id. at 7].

Ultimately, the Court overruled the Petitioner's objections and concluded that the two-level firearm enhancement was applicable, and that Petitioner's criminal history point was accurately assessed. [CR Doc. 87: Statement of Reasons; CR Doc. 111 at 7-8]. Defense counsel conceded that Petitioner would not qualify for the safety valve due to her criminal history points. [CR Doc. 111 at 8]. The Court found that Petitioner's TOL was 27 and her Criminal History Category was II, which yielded a guidelines range of 120 months due to the mandatory minimum. [CR Doc. 87]. The Court, however, varied downward from this range to a TOL of 21, resulting in a guidelines range of 41 to 51 months, based on Petitioner's substantial assistance. [Id. at 2]. The Court entered its Judgment on December 6, 2017, and sentenced Petitioner to 41 months' imprisonment and a term of supervised release of five years. [CR Doc. 86: Judgment]. Petitioner did not file a direct

appeal. On April 13, 2018, Petitioner timely filed the instant Section 2255 Motion to Vacate. The Government responded [Doc. 3] and Petitioner replied [Doc. 3]. This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

A federal prisoner claiming that her "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In many cases, an evidentiary hearing is required to determine whether or not counsel was ineffective for misadvising a petitioner about a plea offer. See generally United States v. Witherspoon, 231 F.3d 923, 926–27 (4th Cir. 2000); 28 U.S.C.A. § 2255(b). After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for her defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced her. See Strickland

v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Further, a petitioner must show that proceeding to trial would have been objectively reasonable. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

When a defendant pleads guilty, she waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea. United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Ci1r. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner asserts five grounds in support of her claim of ineffective assistance of counsel: (1) Petitioner was misled and coerced into signing a plea agreement by her attorney; (2) Petitioner's attorney "failed to aggressively object to the gun enhancement" by "not filing to suppress evidence;" (3) Petitioner's criminal history level overstates Petitioner's criminal history because her attorney "failed by not filing a motion for a vertical departure on this basis;" (4) Petitioner was denied her right to directly appeal and to challenge her conviction due to misleading advice of counsel; and (5) had Petitioner's attorney not been deficient in failing to argue against

the gun enhancement and Petitioner's overstated criminal history, Petitioner would have been eligible for a reduction in sentence based on the safety valve. [Doc. 1 at 4-9]. In her motion, Petitioner requests the Court to vacate her conviction and to resentence her. [Id. at 13].

The Court will group Plaintiff's five ineffective assistance claims into the following three issues: (1) whether counsel misled Petitioner into pleading guilty; (2) whether counsel was ineffective at sentencing; and (3) whether counsel's misleading advice deprived Petitioner of an appeal.

### A. Advice Leading to Guilty Plea

Petitioner contends that her attorney misled and coerced Petitioner into pleading guilty by advising Petitioner that she would be sentenced to a minimum of 36 years' imprisonment if she went to trial. [Doc. 1 at 4, 17, 19-20]. Petitioner contends that if she had known she was being misled, she would not have signed the plea agreement. [Id. at 1]. Petitioner, however, only seeks vacatur of her sentence and does not ask for a trial. [Id. at 20, 31].

Petitioner's contention that her attorney coerced Petitioner to plead guilty is belied by Petitioner's sworn representations during the plea proceedings that she was not threatened, intimidated, or forced to plead guilty; that she was in fact guilty of the offense; and that she was satisfied with her attorney's performance. [See CR Doc. 112 at 7, 11-12]. Petitioner reaffirmed before this Court at sentencing that she understood the charge and the penalties, that she had committed the offense, that her guilty plea was made freely and voluntarily, and that she was satisfied with her attorney's service. [CR Doc. 111 at 3]. Petitioner has not alleged or shown extraordinary circumstances to overcome the sworn testimony that she gave during the plea hearing. See Lemaster, 403 F.3d at 221-22. Accordingly, her claim of ineffective assistance on this issue is without merit.

Furthermore, even if Petitioner could show deficient performance, she has not shown prejudice because she seeks to be resentenced. [See Doc. 1 at 20, 31]. Any request to proceed to trial on the original three charges, rather than to plead guilty, would not have been objectively reasonable and is not supported by contemporaneous evidence, see Lee v. United States, 137 S. Ct. 1958, 1967 (2017), United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012), particularly where Petitioner confessed on videotape to trafficking over 500 grams of methamphetamine, see Doc. 80 at ¶ 9: PSR]. Thus, this claim also fails because he has not adequately alleged or shown prejudice.

### B. Sentencing Hearing

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that she would have received a lower sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999).

#### 1. Firearm enhancement.

Petitioner contends that her attorney was ineffective at sentencing for not filing a motion to suppress or aggressively objecting to the firearm enhancement. [Doc. 1 at 5, 19, 23-24]. In support of her argument, Petitioner contends that she had no knowledge of the gun being in the home, that it was not in her living quarters, and that it was not near any drugs. [Id. at 21]. Contrary to her guilty plea, she also contends that she had no knowledge of the drugs, which she asserts were found outside. [Id. at 22]. Petitioner states that she asked her attorney why the firearm enhancement would apply after the firearm charge was dismissed and her attorney responded that a plea with the enhancement was the best that her attorney could do. [Id. at 23]. Petitioner argues that she would have been eligible for the safety valve reduction but for her counsel's failures. [Id. at 9, 29-30].

Petitioner fails to demonstrate deficient performance. First, she offers no basis on which her attorney could have moved to suppress the firearm, which was found during the execution of a search warrant. Second, the firearm could still be considered relevant conduct despite the firearm charge being dismissed. Counsel specifically reserved the right to contest the firearm enhancement as part of the plea agreement and in Petitioner's acceptance of the factual basis. [CR Doc. 56 at ¶ 8(b); CR Doc. 55 at ¶ 2]. Finally, other than Petitioner's unsupported assertion that the drugs were found outside the home, all arguments Petitioner makes regarding why the firearm enhancement should not apply were made by her attorney. [See Doc. 111 at 5-6]. Petitioner, therefore, has not shown that counsel was deficient. Further, Petitioner cannot show prejudice because this Court rejected these arguments and determined that the firearm enhancement applied. [CR Doc. 111 at 7-8].

As such, Petitioner has shown neither deficient performance nor prejudice with respect to Petitioner's attorney's alleged failure to "aggressively object" to the firearm enhancement. See Strickland, 466 U.S. at 687-88, 694.

### 2. Criminal history point.

Petitioner argues that her attorney was ineffective for failing to file a motion "for a vertical departure" to correct Petitioner's criminal history level computation. [Doc. 1 at 7]. In support of this ground for relief, Petitioner contends that her "criminal history should not only be argued verbally, but by written specification for the basis of the departure." [Id. at 26]. Petitioner contends that her "charge of paraphernalia in her criminal history is overrepresented as a category two. She has no priors other then [sic] the one charge stated." [Id. at 25]. Petitioner believes that had her attorney "aggressively challenged Petitioner's criminal history, Petitioner's sentence

would have been lowered from 41 months at Criminal History category II to 37 months at Criminal History category I." [Id. at 26].

Petitioner cannot show deficient performance or prejudice on this issue. Petitioner's attorney objected to her criminal history score. [CR Doc. 79 at ¶¶ 5-6]. Her attorney argued that Petitioner's 2016 conviction for possession of marijuana paraphernalia was related to the instant offense. [Id. at ¶ 5]. In the PSR addendum, however, the Probation Officer noted that the charges against Petitioner indicated possession of a personal use amount of marijuana, not a distribution amount of methamphetamine as was involved in the instant offense. [CR Doc. 80 at 21]. This Court determined at sentencing that the prior offense was not related to the instant offense, overruled Petitioner's objections, and accepted the second criminal history point.[1] [CR Doc. 87 at 1; CR Doc. 111 at 7-8; see CR Doc. 80 at ¶ 31]. Due to the firearm enhancement and the Petitioner's Criminal History Category, Petitioner was not eligible for the safety valve. [See Doc. 111 at 8; U.S.S.G. § 5C1.2(a)(1), (2)].

As such, Petitioner cannot show deficient performance with respect to sentencing. Petitioner offers no basis on which her attorney could have successfully challenged her Criminal History Category. Further, the Court granted a downward departure below the mandatory minimum after noting that Petitioner's criminal history began when she was 16 for shoplifting and included resisting arrest, providing false information to a peace officer, and concealed weapon and paraphernalia charges. [See Doc. 111 at 21]. Ultimately, the Court, despite overruling Petitioner's objections to her criminal history score, departed to offense level 21, which was three levels lower than that recommended by the Government. [CR Doc. 111 at 8-9, 19, 22].

---

[1] Petitioner does not challenge her 2015 convictions, which resulted in the application of the other criminal history point. [See CR Doc. 80 at ¶ 30].

In sum, Petitioner cannot show deficient performance or prejudice with respect to sentencing. These claims will, therefore, be denied. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

C. **Denial of Direct Appeal**

Finally, Petitioner argues that ineffective assistance because she "was denied her right as to direct appeal and to challenge her conviction due to misleading advice of counsel." [Doc. 1 at 8]. In support of this argument, Petitioner contends she was unable to file a direct appeal because her attorney advised her that Petitioner had waived her rights to a direct appeal by signing her plea. [Doc. 1 at 28]. Petitioner asserts, citing Class v. United States, 138 S. Ct. 798 (2018), that a guilty plea does not bar her from challenging the constitutionality of her statute of conviction. [Id.]. Petitioner's allegations do not specify the context or timing of defense counsel's alleged appeal advice. Petitioner's sentencing was held several months before Class was decided. In Class, the Supreme Court held that a defendant does not relinquish his right to challenge the constitutionality of the statute of conviction on direct appeal. 138 S. Ct. at 803.

In support of its response to Petitioner's motion, the Government submitted an Affidavit of Petitioner's attorney, Julia Mimms. [Doc. 3-1]. Mimms attests that she explained the appeal provisions contained in the Plea Agreement to Petitioner as part of their review of the entire Plea Agreement. [Id. at ¶ 3]. Mimms also explained Petitioner's options regarding a guilty plea versus a jury trial. Mimms further attests that she and Petitioner had no further discussions regarding an appeal and that Mimms at no time told Petitioner that Petitioner could not file a direct appeal. [Id.]. Mimms also testifies that at no time during or after Mimms' representation of Petitioner through sentencing did Petitioner inquire about her appeal rights or request that Mimms file an appeal. [Id. at ¶ 2].

A defendant has an absolute statutory right to a direct appeal. Rodriguez v. United States, 395 U.S. 327, 329-30 (1969). The defendant has the ultimate authority to make the fundamental decision as to whether to appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel has a duty to consult with a defendant about an appeal where "a rational defendant would want to appeal," or where the "defendant reasonably demonstrated to counsel that he was interested in appealing." Roe v. Flores-Ortega, 528 U.S. 470, 479-80 (2000). However, "[i]f the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." Id. at 484. Here, assuming for the sake of argument that Petitioner could show deficient performance, which she has not, Petitioner cannot show prejudice. Petitioner does not claim that, but for her attorney's advice regarding Petitioner's appeal rights, Petitioner would have appealed.

In sum, Petitioner has shown neither deficient performance nor prejudice relative to any of the grounds she asserts in support of her claim for ineffective assistance of counsel. Her claim of ineffective assistance of counsel is, therefore, denied. See Strickland, 466 U.S. at 687-88, 694.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc.1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable

jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: October 17, 2019

Kenneth D. Bell
United States District Judge